**E-FILED**
Thursday, 06 July, 2006  09:24:11 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| E. KIM BRUMMEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-CV-3023 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff E. Kim Brummel appeals from a final decision of the Social Security Administration (SSA) denying her application for Disability Insurance Benefits (DIB)  under the Social Security Act, 42 U.S.C. §§ 416(I) and 423, for the period after July 1, 2002. Brummel brings this appeal pursuant to 42 U.S.C. § 405(g).  The parties have consented to a determination of this case by the United States Magistrate Judge, pursuant to 28 U.S.C. § 636.  Order, June 30, 2005 (d/e 9).  The parties have filed cross-motions for summary judgment or affirmance pursuant to Local Rule 8.1(D).  Plaintiff's Motion for Summary Judgment (d/e 11); Defendant's

Motion for Summary Judgment (d/e 13)[1].  For the reasons set forth below, the Court determines that the SSA's decision is supported by the law and the evidence.  The SSA's Motion for Summary Judgment is therefore allowed, and Brummel's Motion for Summary Judgment is denied.

STATEMENT OF FACTS

A.   Medical History

Brummel was born September 17, 1952.  Brummel underwent a bilateral carpal tunnel release on September 1, 1999.  She had a second carpal tunnel release on her right side in April 2001.  On July 1, 2002, Brummel underwent left shoulder surgery, specifically a left distal clavicle resection.

1.  Treating Physician

Dr. George Crickard performed the surgery and treated Brummel subsequent to it.  Brummel saw Dr. Crickard twice in July 2002 for follow-up examinations.  On both occasions, Dr. Crickard noted that Brummel was doing well.  Dr. Crickard referred Brummel to physical therapy and set

---

[1] Court notes that Plaintiff titled her submission (d/e 10) Plaintiff's Motion for Summary Judgment and Memorandum in Support Thereof.  The substance of (d/e 10) is Plaintiff's memorandum and Plaintiff already has a pending Motion (d/e 11), therefore the Court will consider (d/e 10) as the memorandum in support of (d/e 11), and not as a separate motion.

another follow-up appointment in one month.  On August 13, 2002,

Dr. Crickard again examined Brummel.  He noted that Brummel was still

experiencing pain in her left shoulder, but showed increased motion.  He

concluded "Kim is getting slowly better.  We will return her to work but no

use of the left arm while she is continuing therapy.  We will see her back in

a month and hopefully get her back to full duty."  A.R. 259.  Dr. Crickard

completed a Work Ability Report that noted no use of left arm.  Id. at 309.

In September 2002, Brummel again saw Dr. Crickard.  At that time,

she reported minimal pain in the left shoulder and full range of motion.  The

doctor noted that Brummel remained quite tender over the

acromioclavicular (AC) joint, but that she did not want an injection.

Dr. Crickard instructed Brummel to continue activities as tolerated.  In

October 2002, Dr. Crickard again examined Brummel.  He noted that she

was doing well.  Brummel reported some pain in her left shoulder with

overhead activity and repetition.  Dr. Crickard decided to continue to

protect the left shoulder for one month at work and then planned to return

Brummel to full duty.  He issued a Work Ability Report, dated October 15,

2002, that noted one month of four hour days, then full duty.  A.R. at 310.

At a follow-up on November 21, 2002, Brummel informed Dr. Crickard that her shoulder pain was unchanged.  Brummel stated that she recently returned to an eight-hour work day with no lifting restrictions, and that this was causing her increased pain.  Dr. Crickard noted that Brummel was still recovering, which he deemed "appropriate."  A.R. at 257.  Dr. Crickard concluded, "We will let her go back to 8 hour days but I want to limit her weight lifting on the left side."  Id.  Dr. Crickard issued a Work Ability Report allowing Brummel to return to eight hour days, but requiring no lifting, pushing or pulling over fifteen pounds.  Id. at 312.  Brummel returned to see Dr. Crickard on December 10, 2002, at which time she requested, and he administered, a steroid injection in her left AC joint.  Brummel again saw Dr. Crickard on December 31, 2002.  Brummel stated that the injection relieved her pain for ten days.  Brummel requested physical therapy for pain modalities.  Dr. Crickard stopped Brummel's work at this point, noting that Brummel continued to aggravate her shoulder while working.  Dr. Crickard ordered one month with no use of the left arm, and issued a Work Ability Report requiring no use of the left arm.  Id. at 255, 313.

Dr. Crickard conducted another follow-up on January 23, 2003. He noted that Brummel was doing well and slowly healing.  Dr. Crickard informed Brummel that it could take a year to eighteen months for the symptoms to resolve.  On March 20, 2003, Dr. Crickard saw Brummel. Dr. Crickard opined that permanent restrictions were appropriate and placed her under a "30-pound limit."  A.R. at 254.  Dr. Crickard noted that Brummel was "certainly no better at this point," but that it might take a year to recover from surgery.  Id.

On June 19, 2003, Dr. Crickard issued a Work Ability Report for Brummel, noting the following permanent restrictions: no work requiring repetitive use of left arm, no lifting, pushing, or pulling over twenty pounds, no reaching above shoulder level.  A.R. at 314.  Dr. Crickard's examination notes for the June 19, 2003 examination notes that Brummel informed the doctor that her shoulder pain was "getting somewhat better.  Less intense." Id. at 299.  Dr. Crickard observed a shoulder defect over the AC joint that was "somewhat tender but much less so than last visit."  Id.  Dr. Crickard further noted that Brummel had full range of motion in her fingers with good capillary refill.

Dr. Crickard issued another Work Ability Report on September 23, 2003, noting "No change" to Brummel's work status. A.R. at 315.  The examination notes for the September 23, 2003 visit indicate that Brummel informed the doctor that her shoulder was getting better and that she was experiencing less pain and increased function.  Id. at 301.  Dr. Crickard determined that Brummel had a full range of motion in her left shoulder with some pain on direct palpation.  Dr. Crickard concluded his examination notes by noting "Kim is getting much better.  Her pain is decreased and she has full motion.  It may take her another 6 months or so to fully resolve her pain.  She understood and was pleased.  Meanwhile she can start increasing her activities."  Id.

Brummel returned to see Dr. Crickard on December 23, 2003. Brummel informed Dr. Crickard that she was still experiencing pain in her left AC joint.  Dr. Crickard noted a well-healed surgical wound and no instability in Brummel's shoulder.  Dr. Crickard prescribed physical therapy for pain modalities.  Dr. Crickard issued a Work Ability Report on December 23, 2003, which set out a return to work date of December 23, 2003, and noted no use of left arm as the only restriction.  Brummel had another appointment with Dr. Crickard on February 3, 2004.  Brummel

reported that her left shoulder bothered her daily with pain but she reported

no numbness or tingling.  Dr. Crickard noted:

> Left shoulder is tender to palpation over the anterolateral
> border.  Rotator cuff strength however is 5/5.  She has full
> active and passive range of motion.  No apprehension.  Some
> pain in the impingement zone but this is mild compared to her
> palpation pain.

A.R. at 304.  Dr. Crickard discussed the possibility of another MRI to check

for a rotator cuff tear.  He noted that Brummel "states that she goes to court

tomorrow over this case.  This may make a difference.  We will await the

results of this."  Id.  Dr. Crickard issued another Work Ability Report at this

time, which noted "No change" to Brummel's work status.  Id. at 317.

The record contains a March 9, 2004, letter from Dr. Crickard.  The

letter states that Brummel had been under Dr. Crickard's care for a number

of years for left shoulder pain.  With respect to Brummel's ability to work,

Dr. Crickard noted "Left handed work would be very difficult at this point.

She can sit or stand as much as possible and use her right arm as

necessary."  A.R. at 298.  On August 4, 2004, Dr. Crickard issued a Work

Ability Report, noting the following permanent restrictions: no work

requiring repetitive use of the left arm; no lifting, pushing, or pulling over 20

pounds, and no reaching above shoulder level.  Id. at 372.

3:05-cv-03023-BGC   # 15   Page 8 of 28

2.  Examining physician

On February 20, 2003, Brummel underwent an independent medical
examination by Dr. David Anderson, who issued an evaluation for
Brummel's employer's workers compensation insurer, Liberty Mutual.
Dr. Anderson noted a well-healed incision consistent with Brummel's left
distal clavicle resection.  Dr. Anderson noted that Brummel complained of
tenderness to palpation diffusely about the incision.  Dr. Anderson stated
that the tenderness seemed "disproportionate to any objective findings on
exam."  A.R. at 248.  He noted fair internal and external rotation and good
muscle strength.  Dr. Anderson noted that Brummel's abduction and rotator
cuff functioning against resistance were intact.  He stated that Brummel's
shoulder shrug was normal and he saw no signs of scapular winging.
Brummel's biceps, triceps and brachioradialis reflexes were symmetric and
sensation over her shoulders was intact.  Dr. Anderson examined an x-ray
of Brummel's left shoulder which he characterized as normal.
Dr.  Anderson noted that Brummel's previous MRI and the clinical exam
both indicated that her rotator cuff was intact.  Dr. Anderson opined that the
distal clavicular resection was appropriate for Brummel's problem, despite
her continued symptoms.  Dr. Anderson noted that he would encourage

Brummel to continue with a home exercise program but he would not recommend further diagnostic studies or orthopedic procedures.  Dr. Anderson stated that he would recommend permanent work restrictions for Brummel as follows: no work above shoulder height, no lifting in excess of forty pounds, no repetitive lifting in excess of twenty-five pounds.

Dr. Anderson concluded that he felt Brummel could return to limited work activity if employment could be provided within such restrictions.

### 3.  Non-examining physician

Brummel's medical records were reviewed by Dr. Sandra Bilinsky, a state agency medical consultant.  In a report issued May 9, 2003, Dr. Bilinsky  noted the following limitations on Brummel's ability to work: occasionally lift and/or carry only twenty pounds, frequently lift and/or carry only ten pounds, limitations in pushing and pulling with the upper extremities, no climbing of ladders, ropes or scaffolding, only occasional climbing of ramps or stairs, only occasional balancing, limited overhead reaching, and no concentrated exposure to hazards including machinery and heights.  Dr. Bilinsky opined that Brummel could use her left arm to assist with carrying objects and weight.  A.R. at 282.

4.  Functional capacity evaluation

On May 9, 2003, at the direction of Dr. Crickard, Brummel underwent a functional capacity evaluation by physical therapists with the Quincy Medical Group Sports and Rehabilitation Section.  After performing a number of tests, the physical therapists opined that Brummel could perform a light physical job with the following restrictions: no overhead reaching for greater than thirty seconds, and limited maximal lift of twenty to twenty-five pounds.  A.R. at 274.

5.  Vocational assessment

On August 29, 2003, at the request of her worker's compensation attorney, Brummel underwent a vocational assessment by Delores Gonzalez, a certified rehabilitation counselor.  Gonzalez reviewed Brummel's medical records, noting the following permanent restrictions set by Dr. Crickard on June 19, 2003: no repetitive use of the left arm, no lifting, pushing or pulling over twenty pounds, and no reaching above shoulder level.  A.R. at 142.  Gonzalez opined that Brummel was unable to return to her past work and possessed a severely reduced residual functional capacity.  Gonzalez concluded that Brummel would not be a good candidate for vocational rehabilitation unless she obtained her GED,

but opined that Brummel may suffer from a math learning disability which should be explored.

B.   Administrative Hearing

Brummel filed her application for DIB on March 19, 2003, seeking DIB with an alleged onset date of July 1, 2002.  Her claim was denied initially and on reconsideration.  Brummel requested an administrative hearing, which was held March 24, 2004.  The Administrative Law Judge (ALJ) heard testimony from Brummel and from vocational expert Dr. Jeffery Magroski.

Brummel testified that she completed eight years of school.  In 2002, Brummel was employed as a production sander.  She stated that she had surgery on her left shoulder in July 2002 after she injured it lifting a counter top at work.  Brummel testified that she experienced pain in the shoulder following the surgery and that she was involved in therapy.  According to Brummel, the shoulder improved "somewhat" over time.  A.R. at 383.

Brummel testified that she returned to work around September 23, 2002 for four hours a day.  Brummel stated that, upon her return, she was assigned to perform the same repetitive type of sanding work that she had been doing before the surgery.  According to Brummel, when she returned

to work, she could not use her left arm very much.  At some point, Brummel returned to the sanding for eight hours a day.  She stated that her arm would hurt, become numb, and get cold.  Brummel stopped working in January 2003.  Brummel stated that she continued to experience pain in her arm after that time.  Brummel testified that on occasion, her fingers would be cold, her arm would get numb, and she would drop things.  According to Brummel, she experienced tenderness around the site of her incision and excessive use of her arm made it feel "really tired" and "limp." Id. at 385.  Brummel further stated that her arm would sometimes hurt when she was sitting or watching television.

Brummel stated that if she performed regular housework for a prolonged time, she would experience pain in her arm.  According to Brummel, she would vacuum five rooms and sweep and mop the kitchen and bathroom and then she would need to take a break.  Brummel estimated that it took her a couple hours to accomplish the vacuuming, sweeping, and mopping.  Brummel testified that she could not lift her three-year-old grandson or move a wheelbarrow full of dirt from her backyard to the front yard.  Brummel testified that she could comfortably lift up to

twenty pounds on her left side, but that more weight became uncomfortable.

Brummel also testified about her three carpal tunnel surgeries. Brummel stated that, following the surgeries, if she used her hands for repetitive motions, her wrists would swell and ache. She would also feel a strain on her wrists if she lifted a pitcher or pan of water. Brummel stated that she also had osteoporosis which caused her pain in her knees, elbows, and back. Brummel testified that she experienced migraines and other headaches approximately twenty times a month.

Brummel testified that on a normal day she would get up at 6:00 a.m. and care for her dogs, do laundry, wash dishes, and try to pick up the house. Brummel stated that she took frequent breaks ranging from fifteen to twenty minutes so that her shoulder would not hurt. Brummel testified that she did "[p]retty much the same thing" in the afternoon as in the morning. A.R. at 394. Brummel estimated that she sat resting for approximately two-and-a-half to three hours in an eight hour day. According to Brummel, she performed all of her own housework, but did it in moderation.

Brummel testified that she spent her free time playing with her five dogs and working on the computer for about an hour at a time. Brummel stated that she had a bull mastiff, a German shorthair, a smooth coat Chihuahua, and a long coat Chihuahua. At the time of the hearing, Brummel stated that she was also "dog sitting" another smooth coat Chihuahua. Brummel testified that she belonged to the Quincy Kennel Club and attended monthly meetings and dog shows. Brummel stated that, in the past she had showed her dogs, but that she had not showed dogs since July 2002. Brummel stated that she spent some time watching television, but that she had difficulty concentrating on television programs.

Brummel further stated that she sometimes woke up at night, and that a portion of the times that she woke up were related to pain. Brummel noted that she could not sleep on her left side. She stated that walking did not hurt her shoulder, but that sometimes her shoulder would hurt when she was just sitting still.

Dr. Magroski then testified. He rated Brummel's past work as follows: waitress, light and semiskilled; bartender, light and semiskilled; production sander, light and semiskilled; and inventory laborer, medium and unskilled. The ALJ posed a hypothetical, asking Dr. Magroski to assume an individual

of the same age, education, and work history as Brummel who could work at light exertional level and was right-hand dominant, but was excluded from reaching or work at or above shoulder level on the left side.  Dr. Magroski testified that he was of the opinion that such an individual would be unable to perform Brummel's past work.

Dr. Magroski noted that Brummel had math/cashiering skills from her work as a waitress and bartender that would be transferrable.

The ALJ then posed a second hypothetical to Dr. Magroski.  The ALJ asked Dr. Magroski to assume an individual as set forth in the first hypothetical who could not perform repetitive forceful gripping with either upper extremity.  Dr. Magroski opined that he was unaware of any jobs that such an individual could perform.  In a third hypothetical, the ALJ asked Dr. Magroski to assume the limitations of the first hypothetical with the additional need to rest during the day for two-and-a-half to three hours. Dr. Magroski stated his opinion that this additional limitation would exclude any unskilled or semiskilled work.

At the conclusion of the hearing, the ALJ stated that he would hold the record open for sixty days for the submission of additional evidence.

C.    The ALJ's Decision

The ALJ issued his decision on July 16, 2004, concluding that

Brummel was not disabled.  In reaching this conclusion, the ALJ followed

the five-step analysis set out in 20 C.F.R. § 404.1520.  The analysis

requires a sequential evaluation of (1) whether claimant is engaged in

substantial gainful activity; (2) the severity and duration of claimant's

impairment; (3) whether the impairment equals a listed impairment in

Appendix 1; (4) whether the impairment prevents claimant from doing her

past relevant work; and (5) whether claimant can perform other work, given

her residual functional capacity, age, education, and work experience.  20

C.F.R. § 404.1520(a)(4).  The claimant has the burden of presenting

evidence and proving the issues on the first four steps.  The SSA has the

burden on the last step; the SSA must show that, considering the listed

factors, the claimant can perform some type of gainful employment that

exists in the national economy.  Young v. Barnhart, 362 F.3d 995, 1000

(7th Cir. 2004).

The ALJ determined that Brummel  met her burden on the first two

steps of the analysis, but concluded that Brummel failed to demonstrate

that her impairment was severe enough to equal an impairment listed on

Appendix 1.  A.R. at 7D.  The ALJ then considered whether Brummel

retained the residual functional capacity to perform her past relevant work

(step four) or other work existing in significant numbers in the national

economy (step five).  Id.  The ALJ concluded that Brummel retained the

residual functional capacity to perform "light work, with no work reaching at

or above shoulder level on the left."  Id. at 7E (citations omitted).  The ALJ

noted that there were no mental limitations.

In assessing Brummel's residual functional capacity, the ALJ

recognized that the record lacked evidence of continued care or symptoms

involving carpal tunnel syndrome after Brummel was released to work in

December 2000.  The ALJ further noted that Brummel's recent medical

care was of a routine, outpatient nature relating to her breast pain.  The

ALJ noted Brummel's testimony regarding her symptoms and the fact that

Brummel was able to do light household chores and could pick up and care

for her dogs.  The ALJ observed that Brummel had no difficulty sitting,

standing, or walking at the hearing and characterized Brummel's testimony

as "relevant and spontaneous."  Id.

The ALJ noted that Brummel was involved in a contested worker's

compensation claim, which he characterized as "motivation for secondary

3:05-cv-03023-BGC   # 15   Page 18 of 28

gain." A.R. at 7E. He recognized that Brummel had only a 16 percent

disability rating for worker's compensation purposes. The ALJ further

noted that Brummel was dropped from her worker's compensation job

placement "due to a failure to cooperate." Id. The ALJ concluded:

> Aside from the limited motion in her left arm, the overall record
> discloses that she is in quite good health with no other
> significant limitations. As such, I do not find her allegations of a
> total inability to work due to left arm and shoulder pain to be
> credible.

Id.

The ALJ found that Brummel was unable to perform her past relevant

work; thus, Brummel met her burden at step four and the ALJ correctly

shifted the burden to the Commissioner to show that Brummel retained the

residual functional capacity to perform other work existing in significant

numbers in the national. Id. Based on the vocational expert's testimony,

the ALJ determined that Brummel could work as a cashier, a position that

the ALJ determined existed in significant numbers in the national economy.

Thus, the ALJ deemed Brummel to be "not disabled" at step five.

D.   The Appeals Council

Brummel appealed the ALJ's decision to the SSA Appeals Council.

Brummel's attorney submitted a brief memorandum setting out the alleged

shortcomings in the ALJ's decision.  A.R. at 373-74.  On December 15,

2004, the Appeals Council denied Brummel's request for review.  Id. at 5-6.

The Appeals Council stated that it considered the reasons Brummel

disagreed with the ALJ's decision, as well as the Illinois Industrial

Commission worker's compensation settlement order and a work ability

report from Quincy Medical Group dated August 4, 2004.[2]  The Appeals

Council found no basis for reversing the ALJ's decision.  Brummel filed her

Complaint (d/e 1) in the present case on February 2, 2005.

## ANALYSIS

This Court reviews the ALJ's decision to determine whether it is

supported by substantial evidence.  Substantial evidence is, "such relevant

evidence as a reasonable mind might accept as adequate" to support the

decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  This Court

must accept the ALJ's findings if they are supported by substantial

evidence and may not substitute its judgment for that of the ALJ.  Delgado

v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must at least

minimally articulate his analysis of all relevant evidence.  Herron v. Shalala,

---

[2]Although Brummel's worker's compensation settlement was reached prior to the
administrative hearing in the instant case, Brummel concedes that no evidence of the
settlement was presented to the ALJ.  Plaintiff's Memorandum, p. 20.

19 F.3d 329, 333 (7th Cir. 1994).   The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence.  Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

Brummel seeks reversal of the Commissioner's decision, asserting that the ALJ failed to properly apply legal standards and the ALJ's decision is contrary to the substantial weight of the evidence.  As set forth below, Brummel's arguments are unavailing.

As an initial matter, Brummel characterizes the ALJ's conclusion that Brummel was able to perform light work as "unfounded."  A.R. at 14.  "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).  The ALJ's conclusion that Brummel remained able to perform work at a light exertion level is supported by numerous portions of the record.  The Court notes that this assessment is consistent with Dr. Crickard's more recent opinions of Brummel's capabilities.  At no time after 2003 did Dr. Crickard place exertional restrictions inconsistent

with light work on Brummel.  On March 20, 2003, Dr. Crickard placed

Brummel under a thirty-pound restriction.  A.R. at 254.  On June 19, 2003,

Dr. Crickard's June 19, 2003, Work Ability Report for Brummel noted the

following permanent restrictions: no work requiring repetitive use of left

arm, no lifting, pushing, or pulling over twenty pounds, no reaching above

shoulder level.  A.R. at 314.  His September 23, 2003, Work Ability Report

noted "No change" to Brummel's work status.  Id. at 315.  A Work Ability

Report on December 23, 2003, noted no use of left arm, but did not include

any exertional restrictions.  A February 3, 2004, Work Ability Report noted

"No change" to Brummel's work status.  Id. at 317.  The record before the

ALJ also contained a March 9, 2004, letter from Dr. Crickard that noted

"Left handed work would be very difficult at this point.   She can sit or stand

as much as possible and use her right arm as necessary."  Id. at 298.

Additionally, Dr. Anderson's proposed permanent restrictions for Brummel,

i.e., no work above shoulder height, no lifting in excess of forty pounds, no

repetitive lifting in excess of twenty-five pounds, are consistent with a

finding that Brummel is capable of light work, as are the conclusions of the

physical therapists from Quincy Medical Group.  There is sufficient record

evidence to support a conclusion that Brummel remained capable of light work.  Brummel's argument to the contrary fails.

Brummel further asserts that the ALJ erroneously failed to explain his rationale for rejecting the opinion of Brummel's treating physician, Dr. Crickard, that Brummel should be restricted from work requiring repetitive use of her left arm and further, that the ALJ erred in omitting such a restriction from the hypothetical posed to the vocational expert.  As an initial matter, the Court notes that the ALJ did not expressly conclude that Brummel could perform work requiring repetitive use of her left arm.  The ALJ determined Brummel's residual functional capacity as the capacity for light work with no reaching at or above shoulder level on the left.  In reaching this conclusion, the ALJ expressly discounted Brummel's subjective allegations that she was totally unable to work due to pain in her left arm and shoulder, citing S.S.R. 96-7p.  As required under S.S.R. 96-7p, the ALJ assessed Brummel's credibility in light of the record as a whole and set forth specific reasons upon which he was basing his credibility determination.

The Court notes that Dr. Crickard's opinion that Brummel should be restricted from repetitive use of her left arm was not supported by specific

medical findings.  As set forth above, the restrictions imposed by

Dr. Crickard varied over time, while his assessment of Brummel's physical

condition remained the same.  Dr. Crickard did not provide explanation for

his varying opinion on restrictions from June 19, 2003 forward.  Brummel

asserts that Dr. Crickard's final permanent restriction that she do no work

requiring repetitive use of her left arm is a "very significant vocational limit."

Plaintiff's Motion for Summary Judgment, p. 13-14.  The Court notes,

however, that this final permanent restriction was not put into place until

August 2004, after the ALJ's decision was issued.  Thus, the ALJ did not

err in omitting an express restriction on repetitive use of the left arm from

his residual functional capacity assessment.

Furthermore, a hypothetical question posed by an ALJ to a vocational

expert must fully set forth the claimant's impairments to the extent that the

impairments are supported by the medical evidence in the record.

Herron v. Shalala, 19 F.3d 329, 337 (7th Cir. 1994).  As set forth above,

Dr. Crickard's restriction on repetitive use of the left arm was not supported

by specific medical findings.  Moreover, the absence of such a restriction is

consistent with the other medical evidence of record, including the

conclusions of the examining and non-examining physicians and the

functional capacity evaluation by the physical therapists from the Quincy Medical Group.  Brummel's claim of error fails.

Brummel further asserts that the ALJ based his residual functional capacity assessment on erroneous or incomplete facts.   Brummel points to S.S.R. 96-5p which cautions adjudicators not to assume that medical sources using terms such as "light work" are aware of the SSA's definitions of such terms.  Brummel points to several specific references to "light work" in the medical evidence which fail to define "light."  However, as set forth in detail above, the record contains numerous references by physicians to specific exertional limitations that fall within the definition of light work.  The ALJ was not forced to rely merely on undefined references to light work.  Brummel's claim of error fails.  Brummel also characterizes as unsupported the ALJ's statement that Brummel was dropped from her worker's compensation job placement program for failure to cooperate.  However, the express reason stated by the program in closing heir file is "claimant not cooperative."  A.R. at 106.  Brummel's claim of error fails.

Finally, Brummel asks the Court to remand the case based on the fact that the ALJ's decision does not mention the written report or deposition of Delores Gonzalez.  These items were filed after the

administrative hearing, during the period in which the ALJ stated he would leave the record open for submissions.  The ALJ fails to discuss either the report or deposition in his written opinion.  Brummel contends that the ALJ's failure to address Gonzalez's opinion in his written order fell below the minimal level of articulation required.  The Court disagrees.

Brummel asserts that Gonzalez's opinion was in direct conflict with that of vocational expert Magroski.  Turning to Gonzalez's conclusions, Gonzalez determined that Brummel retained a residual functional capacity as follows: no work requiring repetitive use of the left arm, no lifting, pushing, or pulling over twenty pounds, and no reaching above shoulder level.  A.R. at 158.  Gonzalez based this opinion on Dr. Crickard's June 19, 2003 restrictions.  Id.  According to Gonzalez, these restrictions placed Brummel in a "very narrow range of sedentary work."  Id.  Gonzalez placed Brummel in the sedentary work level based on her belief that Brummel was unable to perform some requirements of light work.  Gonzalez testified in her deposition that Brummel was "not allowed to do the work requirement of repetitive use of the left arm, so basically she's a one armed individual and no reaching above shoulder level.  That's why I included the definition of sedentary work."  Id. at 159.  On several occasions, Gonzalez equated

Page 25 of  28

no repetitive use of the left arm with no use of the left arm.  <u>See, e.g.</u>, <u>id</u>. at 159, 184.  When asked to define "repetitive use," Gonzalez replied, "More than a few times an hour."  <u>Id</u>. at 182.  However, Gonzalez went on to clarify, "Everybody has a different definition of repetitive, and then what might be repetitive for one person, may not be repetitive for another." <u>Id</u>. at 183.

Gonzalez further opined that Brummel could perform only a narrow range of sedentary work.  Gonzalez explained that most light or sedentary jobs require "good bimanual dexterity."  A.R. at 159.  According to Gonzalez, Brummel "doesn't have that, and because of that, she would be a limited."  <u>Id</u>. As an initial matter, the Court notes that Gonzalez was not a medical source and Brummel fails to identity any provision requiring the ALJ to expressly address her opinions in his written order.  The Court further notes that Gonzalez's opinion was expressly based on a residual functional capacity assessment of no work requiring repetitive use of the left arm, no lifting, pushing, or pulling over twenty pounds, and no reaching above shoulder level, based on Dr. Crickard's June 19, 2003 restrictions. This residual functional capacity is different than the hypothetical posed to Magroski as well as the ALJ's ultimate residual functional capacity

determination, which, as previously noted, is supported by substantial evidence.

Moreover, Gonzalez's conclusion that Brummel was limited to a narrow range of sedentary work was expressly premised on Gonzalez's opinion that Brummel lacked good bimanual dexterity. There is, however, no medical opinion in the record stating that Brummel lacked bimanual dexterity. Finally, there is no readily apparent conflict between Magroski's opinion that Brummel retained transferable skills from working as a waitress and bartender of "Giving change, making change, [and] dealing with the public" and the independent test by the worker's compensation insurer that rated Brummel's math skills at a fourth grade level which is cited by Gonzalez. See A.R. at 401. Therefore, for all of these reasons, the ALJ did not err in failing to expressly address or credit Gonzalez's report and deposition. No remand is necessary.

THEREFORE, as set forth above, Brummel's claims of error fail. The ALJ's decision that Brummel was not disabled is supported by the law and by substantial evidence. The Commissioner of Social Security's Motion for Summary Judgment (d/e 13) is ALLOWED. Plaintiff E. Kim Brummel's Motion for Summary Judgment (d/e 11) is DENIED. The decision of the

Commissioner of Social Security is AFFIRMED.  All pending motions are

denied as moot.   THIS CASE IS CLOSED.

IT IS THEREFORE SO ORDERED.

ENTER:   July 5, 2006.

FOR THE COURT:

s/ Byron G. Cudmore

_____

BYRON G. CUDMORE
UNITED STATE MAGISTRATE JUDGE